UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

MICHAEL A. DEMUTH,

                              Plaintiff,

                                                            9:18-CV-895
v.                                                          (GLS/TWD)

ERNEST CUTTING, LT. CHRIS MILES, SR.,
C.O. REESE,

                              Defendants.

———————————————————————————

APPEARANCES:                                OF COUNSEL:

MICHAEL A. DEMUTH
Plaintiff, *pro se*
19-B-1439
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034

OFFICE OF FRANK W. MILLER              FRANK W. MILLER, Esq.
Counsel for Defendants
6575 Kirkville Road
East Syracuse, New York 13057

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

Michael A. Demuth ("Demuth" or "Plaintiff") commenced this civil rights action under

42 U.S.C. § 1983 regarding alleged violations of his constitutional rights.  (Dkt. No. 1.)

According to Demuth, C.O. Reese ("Reese"), a correctional officer at Chenango County

Correctional Facility, retaliated against him for filing grievances.  *Id.*  Plaintiff seeks

compensatory damages against Reese and an injunction directing Ernest Cutting ("Cutting") and

Lt. Chris Miles ("Miles") to ensure Reese does not retaliate against him.  (Dkt. No. 10 (Decision and Order on initial review describing the remaining claims).)

Currently before the Court is Defendants' motion for summary judgment.  Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies and his claim is meritless.  (Dkt. No. 31.)  Plaintiff did not respond to Defendants' motion for summary judgment despite several extensions of time to do so.  (Dkt. Nos. 36, 38.)  Therefore, the Court considers Defendants' motion unopposed.  For the reasons that follow, the Court recommends granting Defendants' motion on exhaustion grounds and dismissing this case with prejudice.

## I.     STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 273 (citations omitted).  As noted above, Plaintiff failed to respond to Defendants' motion for summary judgment.  Plaintiff's failure to oppose Defendants' motion results in the admission of properly supported facts, however the Court must still ensure those facts show Defendants are entitled to judgment as a matter of law.  *See Jackson v. Federal Express*, 766 F.3d 189, 194 (2d

Cir. 2014) (a non-response to a summary judgment motion does not risk default because the district court must ensure that each statement of material fact is supported by the record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed) (citing *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242-46 (2d Cir. 2004) (even when a motion for summary judgment is not opposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law)).

## II.    BACKGROUND

Giving Plaintiff the benefit of the doubt, the Court interprets his complaint as alleging Reese took the following retaliatory actions: (1) he destroyed a grievance Plaintiff had intended to file against him; and (2) he verbally assaulted Plaintiff when he inquired about the missing grievance which resulted in a 24-hour lock-in and subsequent false misbehavior report.

Specifically, on July 14, 2018, Plaintiff turned in three informal grievances to non-party Corrections Officer Bates. (Dkt. No 31-2 at ¶ 5.) Officer Bates placed the grievances on the desk at Housing Unit C. *Id*. at ¶ 6. Reese then replaced Officer Bates in Housing Unit C during Bates's lunch break. *Id*. at ¶ 7. After Officer Bates returned, Plaintiff asked him how many grievances were at the desk and Officer Bates located only two. *Id*. at ¶ 8. Plaintiff alleges Reese removed one of the grievances because it related to him.

Moreover, on July 27, 2018, Plaintiff was sitting at his table for meal service and engaged with Reese about whether Reese destroyed one of Plaintiff's grievances. (Dkt. No. 1.) Reese ordered Plaintiff to lock-in and he filed a misbehavior report against Plaintiff. (Dkt. No. 31-2 at ¶ 16.)

Plaintiff filed a formal grievance related to the missing grievance incident on July 14, 2018, and Reese's harassment and subsequent lock-in on July 27, 2018.  *Id*. at ¶¶ 11, 14.  The grievances were denied and Plaintiff never appealed.  *Id*. at ¶¶ 13, 15.

## III.    EXHAUSTION

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to satisfy the exhaustion requirements.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Whether a plaintiff has exhausted his administrative remedies is a question of law.  *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment.  *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Mckinney v. Prack*, 170 F. Supp. 3d 510, 514 (W.D.N.Y. 2016) (granting a motion for summary judgment made in lieu of an answer where inmate failed to exhaust administrative remedies)).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S.

81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

The Chenango County Correctional Facility has a seven-step inmate grievance procedure. (Dkt. No. 31-8 at 26-28.)  First, the inmate must "attempt to reach a solution with the Corrections Officer assigned" to his housing area.  *Id*. at 27.  Second, the inmate may request an informal complaint form.  *Id*.  Third, the inmate may request a formal grievance form.  *Id*.  Fourth, the grievance is investigated and the Investigating Grievance Officer provides a written determination within five business days of receiving the complaint.  *Id*.  Fifth, the inmate may appeal to the Jail Administrator or his or her designee within two business days of receiving the Grievance Officer's decision.  *Id*.  Sixth, the Jail Administrator responds within five business days.  *Id*.  Seventh, the inmate may appeal to the State Commission of Corrections, which responds within forty-five days.  *Id*.

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies at Chenango County Correctional Facility.  To that end, as stated above, Plaintiff asserts the following two allegations of retaliation: (1) Reese destroyed a grievance Plaintiff had intended to file against him; and (2) Reese verbally assaulted Plaintiff when he inquired about the missing grievance which resulted in a 24-hour lock-in and subsequent misbehavior report. With respect to the lost grievance incident, on July 28, 2018, Plaintiff filed formal Grievance SCOC 7032-1, No 18-240.  (Dkt. No. 31-7 at ¶¶ 5-6; Dkt. No. 31-10.)  That grievance was denied on August 8, 2018, and Plaintiff did not appeal.  (Dkt. No. 31-7 at ¶ 6.)

Plaintiff filed a second grievance, No. 18-241, on July 27, 2018, reiterating his complaint about the lost grievance and adding allegations regarding Reese's verbal harassment.  (Dkt. No. 31-7 at ¶ 8; Dkt. No. 31-12.)  That grievance was denied on August 8, 2018, and never appealed.

5

(Dkt. No. 31-7 at ¶ 8.)  In his deposition, Plaintiff admits to accepting the denial of these grievances and electing to file a legal complaint rather than pursue his administrative remedies. (Dkt. No. 31-4 at 4-5, 8, 11.)

Moreover, Plaintiff's original complaint was signed July 27, 2018, and filed on August 1, 2018—*before* the first step of the administrative process had completed.  (Dkt. No. 1.)  In the Second Circuit, if a prisoner files suit in federal court before exhausting administrative remedies, the federal court must dismiss the complaint—suspending or continuing the action until administrative remedies are exhausted cannot "save a case from dismissal."  *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516. For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies.

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016).  More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)).  In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In *Williams v. Correction Officer Priatno*, the Second Circuit noted "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" 829 F.3d 118, 123 n.2 (2d Cir. 2016). The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

There is no evidence in the record showing the Chenango County Correctional Facility grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence that prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60. The only *Ross* factor that could potentially be raised is unavailability due to an "opaque" administrative scheme. *See id.* However, even if the Court were to be extremely deferential to Plaintiff's *pro se* status, there is no evidence to establish an issue of fact as to the program's opacity. To the contrary, Plaintiff, as noted above, readily acknowledged he chose to file a legal complaint rather than appeal the denial of his grievances through the administrative process. (Dkt. No. 31-4 at 4-5.)

Therefore, the Court recommends granting Defendants' motion for summary judgment on exhaustion grounds.

It is appropriate for the Court to dismiss a claim without prejudice for failing to exhaust administrative remedies "[i]f the time permitted for pursuing administrative remedies has not

expired." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider*, 199 F.3d at 111-12). However, the Court may dismiss the claim with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Id.* at 88.

Here, more than a year has passed since Plaintiff should have appealed the grievance. As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's action with prejudice. *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at \*5-6 (N.D.N.Y. June 6, 2019).[1]

## IV.    CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's lawsuit be dismissed with prejudice; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[1] Because the record establishes Plaintiff failed to avail himself of available administrative remedies before commencing this action, the Court declines to consider whether his claim would have survived Defendants' motion relative to the merits of his claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: February 19, 2020
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[2]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 10 of 31

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

🏷 KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by Crichlow v. Fischer, W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW
|
Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

 **\*1** Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 42 U.S.C. § 1983 in the Southern District
of New York on October 16, 2012. (Dkt. 2). Plaintiff filed
an amended complaint seeking relief against 136 Defendants
on June 17, 2013. (Dkt. 12). The action was transferred to
this Court on April 28, 2015. (Dkt. 168). The action was
then severed by this Court on February 10, 2017. (Dkt. 223).
Following severance, 35 Defendants (together "Defendants")
remain. (See id. at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;

Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (See Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(See Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (See Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (id. at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (Id. at 31; see, e.g., Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (Id. at 3).
Plaintiff also asserts that he was subjected to a risk of disease
due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at
35).

Case 9:18-cv-00895-GLS-TWD   Document 40   Filed 02/19/20   Page 11 of 31

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.*, Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. **Defendant's Motion for Summary Judgment**

### A. **Standard of Review**

 **\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after viewing the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

**B. Statute of Limitations**
Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject

to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y.,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-00895-GLS-TWD   Document 40   Filed 02/19/20   Page 13 of 31

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v. Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and*

*recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer,* 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez,* 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 14 of 31

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

## C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed,* 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw,* 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with

particularity." *McCoy v. Goord,* 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano,* 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill,* 380 F.3d at 686). However, the third prong of *Hemphill,* relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of *Hemphill,* is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl,* Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout

listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

**D. Plaintiff's Due Process Claims**
Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

**1. SHU Confinement**
Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population,'" in determining whether a liberty interest is implicated. *Vasquez v. Coughlin,* 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and

somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

*7 There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz,* 380 F.3d at 654-55; *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.'" (quoting *Palmer,* 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

**2. Grievance Processing**
Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca,* 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord,* No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 16 of 31

processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy,* 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer,* 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer,* 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim.

(*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 17 of 31

discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV. Plaintiff's Motion to Appoint Counsel

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not

sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V. Plaintiff's Motion for a Stay

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI. Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at \*1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at \*3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 18 of 31

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

**\*10**  Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau, 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011)* ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd,* 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue

that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be— but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 (2d Cir. 2012)* (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see Ceglia v. Zuckerberg,* No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd,* 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11**  Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 920753

---

Footnotes

1    Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 20 of 31

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jonathan MENA, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

*1 Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]
On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he

could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

*2 As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he

took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

**B. Procedural History**
On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

**II. LEGAL STANDARD**
Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts

(that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3**  Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 22 of 31

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

## III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days[,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance,

[p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 23 of 31

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams,* 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross,* 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner,* 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross,* 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin,* 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D)(9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross,* 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross,* 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams,* 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams,* 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross,* 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.,* *Winston v. Woodward,* No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted.[2]

IV. CONCLUSION

**Mena v. City of New York, Not Reported in Fed. Supp. (2016)**

Case 9:18-cv-00895-GLS-TWD    Document 40    Filed 02/19/20    Page 24 of 31

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

**End of Document**                                               © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2870300
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Roberto CASTINEIRAS, Plaintiff,
v.
A. HELMS, Defendant.

9:17-CV-1084 (BKS/ATB)
|
Signed 06/06/2019

**Attorneys and Law Firms**

ROBERTO CASTINEIRAS, Plaintiff, pro se

AIMEE COWAN, Asst. Attorney General, for defendants.

**REPORT and RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1** This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff has filed this civil rights complaint alleging that on August 21, 2017, at Upstate Correctional Facility, defendant Helms used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named two defendants: Corrections Officer ("CO") A. Helms, and "Jane Doe," a nurse on duty at the time of the incident. (Compl. at 1). On December 19, 2017, after initial review of the complaint, Judge Sannes dismissed the complaint against defendant Jane Doe. (Dkt. No. 9).

Presently before the court, is a motion for summary judgment filed by defendant Helms, arguing that plaintiff has failed to exhaust his administrative remedies. In the alternative, defendant argues that plaintiff's Eighth Amendment claim may be dismissed on the merits, and that defendant is entitled to qualified immunity. (Dkt. No. 24). Plaintiff has responded in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 26, 27). For the following reasons, this court agrees that plaintiff has failed to exhaust his administrative remedies and will recommend that the defendant's motion for summary judgment be granted.

**DISCUSSION**

**I. Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

**II. Exhaustion of Administrative Remedies**

**1. Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

There is a special section for complaints of "harassment." *Id.* § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at \*7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility,[1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i).

Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5.[2]

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, — U.S. —, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, — U.S. —, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 Fed.Appx. at 580. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, — U.S. —, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, — U.S. —, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or

"opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [3] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

**2. Application**

**\*4** In this case, defendant argues that plaintiff failed to exhaust his administrative remedies because he failed to appeal the Superintendent's denial of his grievance to the CORC, and the administrative remedy was "available" to him. (Def.'s Mem. of Law at 3-5) (Dkt. No. 24-9). Defendant also argues that plaintiff failed to specifically identify defendant Helms in his grievance as one of the officers who actually struck plaintiff. [4] (*Id.* at 4). This court need not reach defendant's last argument regarding exhaustion because there are at least two other reasons why plaintiff failed to exhaust his administrative remedies as discussed below, the first of which was not raised by the defendant.

Plaintiff attached his grievance to the complaint in this federal action. (Compl. at CM/ECF p.7). The grievance is dated "9/21/17," and it was received by the Grievance Committee and given Grievance No. UST-61853-17 on "9/22/17." (*Id.*) Plaintiff's federal complaint was also signed "9/21/17," and it was received by the court on "9/28/17." (Compl. at CM/ECF p.6 & Dkt. No. 1 *generally*). If plaintiff signed his administrative grievance and his federal complaint on the same day and mailed the federal complaint to the court, it is impossible that plaintiff could have exhausted his administrative remedies before he filed his federal action. In fact, in the section of the form-complaint which asks the plaintiff "What was the final result of your grievance?", plaintiff's answer was: "[it] is being in investigation under Code 49 harassment/misconduct." [5] (Compl. at CM/ECF p.3).

A civil rights claim must be exhausted by the grievance process, which requires the completion of the three-step process, *before* an action asserting that claim may be filed. *See*, e.g., *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at \*5 (N.D.N.Y. Nov. 9, 2015), *Rep't Rec., adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015); *See also Klein v. Fischer*, No. 13-CV-0437, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.").

The court will also examine whether plaintiff exhausted his administrative remedies *after* filing this action. If plaintiff had done so, the federal complaint would still have to be dismissed, but the plaintiff would have been able to re-file the federal complaint immediately because his remedies would already have been exhausted. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to

exhaust should be without prejudice to refiling following exhaustion). If plaintiff did not exhaust his remedies during the pendency of this action, the dismissal may still be without prejudice, but plaintiff will have to attempt to exhaust his administrative remedies prior to refiling.

In this case, the parties dispute whether plaintiff completed the exhaustion requirement during the pendency of this action. Defendant Helms argues that plaintiff did not appeal the denial of his grievance to the CORC, and thus never completed the administrative grievance process for his claim at all. (Dkt. Nos. 24-1; 24-9). Plaintiff argues that he did appeal to the CORC, but did not keep copies of any of the relevant documents. The parties agree that plaintiff filed Grievance UST-61853-17 following the alleged August 21, 2017 incident. (Cowen Dec. Ex. A, at 2). Because plaintiff's grievance involved allegations of employee harassment, it was forwarded directly to Upstate's Superintendent for review and response. (Cowen Decl. Ex. A at 7). Plaintiff's grievance was subsequently denied by the Superintendent. (Cowen Dec. Ex. A, at 3). However, the parties disagree as to whether plaintiff appealed the Superintendent's decision to the CORC. (Cowen Dec. Ex. A, at 3; Dkt. No. 24 at 7-9; Dkt. No. 24-5 at 32-33).

**\*5** Defendant has filed the Declaration of Rachel Seguin, the Assistant Director of the DOCCS IGP and custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1-2, 7). Assistant Director Seguin reviewed the CORC records, searching for any appeals filed by plaintiff with the CORC and found no grievance appeals by plaintiff. (Seguin Decl. ¶¶ 7-9; Ex. A).

In his deposition, plaintiff claims to have filed his appeal to the CORC and claims that the CORC issued a decision denying his grievance. (Pl.'s Dep. at 32-33). Plaintiff's testimony regarding the appeal was vague. *Id.* Plaintiff has been unable to produce the alleged denial of appeal by the CORC, although he claims to have received such a denial, and has failed to produce any other evidence that the appeal was filed. Plaintiff testified that he did not keep a copy of his appeal or of the CORC's decision. (*Id.* at 32). Although plaintiff responded to the defendant's summary judgment motion, he failed to address the exhaustion issue. (See Dkt. No. 26). [6] Thus, he has failed to address Assistant Director Seguin's sworn statement that there is no record of plaintiff having filed an appeal with CORC regarding any alleged misconduct by defendant Helms.

Unlike the plaintiff in *Williams*, this plaintiff does not argue that administrative remedies were unavailable to him. Rather, plaintiff claims that he completed all the required steps to exhaust his administrative remedies. He alleges that he did not keep the relevant documents. It is undisputed that plaintiff filed a grievance and received a decision from the Superintendent denying his claim. Because plaintiff has failed to claim that administrative remedies were unavailable to him, any recognized exceptions to the exhaustion of administrative remedies requirement are not relevant to the court's analysis. *See Ross*, 136 S.Ct. at 1853-54.

When a plaintiff fails to exhaust his administrative remedies, the court must dismiss the action without prejudice so that the plaintiff may complete the exhaustion process and re-file his action, unless the time permitted for filing a grievance or appeal has finally expired. *See Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies") (citation omitted).

In this case, the Superintendent's decision was dated October 27, 2017, and the bottom of the document contains an "Appeal Statement," informing the plaintiff that he had "seven (7) calendar days from receipt of this notice to file your appeal.\* Please state why you are appealing this decision to C.O.R.C." (Def.'s Ex. A at 3). *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). The text associated with the asterisk above states that "\*An exception to this time limit may be requested under Directive #4040, section 701.6(g)." (*Id.*) This document is Form # 2133. (*Id.*) The appeal section of the form is blank, [7] and the regulations specifically provide that "If the grievant or any direct party wishes to appeal to the CORC, he or she *must complete and sign form #2133* and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." 7 N.Y.C.R.R. § 701.5(d)(1)(i) (emphasis added). This section of the regulation further states that "an exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part." *Id.* However, section 701.6(g) provides that "an exception to this time limit may not be granted if the request was made more than 45 days after an alleged occurrence."

**\*6** Thus, plaintiff may not return to exhaust his administrative remedies as against defendant Helms because,

although he could have requested an exception to the seven-day time limit for appealing to the CORC within 45 days of the occurrence of the incident, that time limit has long since expired, and there appear to be no exceptions to the 45 day limit in the regulations. Because plaintiff may not return to exhaust his administrative remedies as against defendant Helms, I must recommend dismissal with prejudice as against defendant Helms.

In his response to defendant's motion, plaintiff references another investigation surrounding the events of August 21, 2017 and argues that his Eighth Amendment claim should survive summary judgment, even if defendant Helms is granted a "partial" summary judgment on his exhaustion argument. (Dkt. No. 26). According to plaintiff, an investigation conducted by the Office of Special Investigations ("OSI") established that the *nurse* on duty on the day of the incident was guilty of abusive behavior. (Dkt. No. 26).

A copy of the investigative report is attached to defense counsel's affidavit as Exhibit B. The OSI report referenced plaintiff and another inmate, who complained about an unrelated, but similar incident involving the nurse. (Cowan Decl. Ex. B). The OSI investigated the August 21, 2017 incident. (Cowan Dec. Ex. B). The investigation was conducted to look into allegations made by plaintiff, as well as additional allegations by a different inmate at Upstate Correctional Facility, against the nurse on duty during the August 21, 2017 incident (Nurse Marla Travers). (*Id.*) However, even assuming that this investigation sufficed to exhaust plaintiff's claims against Nurse Travers, [8] all claims against "Jane Doe Nurse" were dismissed from this case *sua sponte* by the Judge Sannes. (Dkt. No. 9). [9]

**\*7** In any event, the report states that the investigation was "assigned on September 28, 2017, and Investigator Ryan Graziano signed the completed OSI Report on May 8, 2018, long after plaintiff filed this federal complaint." Thus, notwithstanding the OSI investigation, which focused only on the nurse, plaintiff still failed to exhaust his administrative remedies *prior to* filing this federal complaint. The complaint still remains dismissed without prejudice as to the Jane Doe nurse.

## III. Additional Discovery

### 1. Legal Standards

Pursuant to Fed. R. Civ. P. 56(f), a party opposing a motion for summary judgment based on insufficient discovery must file an affidavit describing: (1) "the nature of the uncompleted discovery;" (2) "how the facts sought are reasonably expected to create a genuine issue of material fact;" (3) "what efforts the affiant has made to obtain those facts" and; (4) "why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); see also *Brunson v. Jonathan*, 677 F. Supp. 2d 640, 641 (W.D.N.Y. 2010).

### 2. Application

In his response to defendant's motion, plaintiff also argues that he should be allowed to conduct further discovery in this matter in the form of depositions and interrogatories. (Dkt. No. 26). Plaintiff has not met the requirements for additional discovery under Rule 56(f). Plaintiff's response to defendant's motion merely states that discovery "in the form of depositions" and "interrogatories" would be "instrumental" to establish defendant's culpability. Plaintiff's vague and conclusory statement fails to demonstrate how his ability to respond to defendant's motion for summary judgment was impaired by his lack of discovery or what documents he wishes to obtain that would be material to the exhaustion or any substantive issue.

Additionally, in defendant's reply, defense counsel asserts that she complied with the Court's Mandatory Pretrial Discovery order and forwarded the required discovery material to plaintiff. (Dkt. No. 27). Further, defendant notes that plaintiff had six months to conduct discovery after defendant filed his answer to plaintiff's complaint on February 6, 2018 (Dkt. No. 16). The deadline for discovery did not expire until August 7, 2018. (Dkt. No. 17). Moreover, defendant's reply states that there is no indication that plaintiff ever demanded any further discovery or an extension of the discovery deadline. Thus, plaintiff has not met the requirements of Rule 56(f).

## IV. Conclusion

Based upon the complaint itself, the grievance documents, and Assistant Director Seguin's declarations, plaintiff has failed to raise an issue of fact as to whether, prior to the initiation of this action, he properly filed his grievance and/or appealed the grievance against defendant Helms to the CORC as required by the IGP. *See*, e.g., *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits.") (internal quotation marks and emphasis omitted)).

The court also concludes that there are no issues of fact material to whether plaintiff has ever exhausted his administrative remedies with respect to the claim against defendant Helms. No reasonable fact finder could conclude that plaintiff pursued an appeal to the CORC after he filed this action or that he could still pursue such an appeal within the applicable deadlines. Accordingly, I recommend that defendant's motion be granted, and that plaintiff's complaint be dismissed with prejudice based on his failure to exhaust available administrative remedies prior to commencing this action and thereafter, though the expiration of the applicable deadlines to do so.

  **\*8** **WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS TO DEFENDANT HELMS**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**All Citations**

Slip Copy, 2019 WL 2870300

Footnotes

1   The regulation states that "[a]llegations of employee harassment are *of particular concern to the administrators of department facilities.*" 7 N.Y.C.R.R. § 701.8 (emphasis added).

2   The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

3   My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

4   Defendant argues that the grievance states only that defendant Helms verbally threatened plaintiff after the excessive force incident. (Def.'s Mem. of Law at 4).

5   Exhaustion is an affirmative defense. Thus, even though it seems clear from the face of the complaint that plaintiff's remedies were not exhausted, in an abundance of caution, the complaint was allowed to proceed past initial review.

6   Plaintiff argues in his Response to defendant's motion for summary judgment that he is entitled to an appointment of counsel. (Dkt. No. 26). Requests of counsel must be made by a Motion for Appointment of Counsel in compliance with the Northern District of New York's local rules. Plaintiff is aware of this requirement as he has previously moved to appoint counsel and the court has denied his motion. (Dkt. Nos. 18, 20).

7   This further supports the defendant's assertion that plaintiff did not, in fact, appeal the Superintendent's denial of his grievance to the CORC.

8   Normally, if plaintiff had filed directly with the Inspector General or OSI, such a complaint would not be sufficient for exhaustion purposes. *Smith v. Kelly*, 985 F. Supp. 2d 275, 285 & n.16 (N.D.N.Y. 2013) ("The Court notes that there is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC.") In this case, it is clear from the OSI report that the investigation was requested by the Superintendent on September 19, 2017, but was not finally decided until June 5, 2018. (Cowen Decl. Ex. B at 1, 4). There would have been no need to appeal the OSI finding because it was in plaintiff's favor, and Nurse Travers resigned from her position on April 18, 2018. (Cowen Decl. Ex. B at 3). However, it appears that whatever grievance or complaint prompted the Superintendent to request an OSI investigation, it must have been based on different facts than the grievance that plaintiff attached to his federal complaint because the Superintendent's response to Grievance UST-61853-17 was a *denial* on October 27, 2017, including a statement that "no misconduct by staff was found." (Cowen Decl. Ex. A at CM/ECF p.3). Plaintiff would have been required to appeal that denial in order to exhaust his claims against defendant Helms.

9    Plaintiff had the opportunity to amend his complaint to add the nurse in question as a party. He clearly knew the nurse's name at the time of the OSI investigation, but never filed an amended complaint with the court. The complaint as to Nurse "Doe" was dismissed without prejudice.

---

**End of Document**                                          © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2020 Thomson Reuters. No claim to original U.S. Government Works.    7